IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **KENNETH ALLISON,** | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 13-547 |
| | ) | |
| **WAL-MART STORES, INC.** | ) | |
|     Defendant. | ) | |

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 23), Plaintiff's Response (Doc. 31), and Defendant's Reply (Doc. 33). Upon due consideration of the parties' briefs and evidentiary submissions (Docs. 24, 31, 32, and 33), Defendant's motion is due to be **GRANTED** on all claims.

**I.    Procedural History**

On November 6, 2013, Plaintiff Kenneth Allison ("Allison") commenced this action by filing a complaint against Wal-Mart Stores, Inc. ("the Defendant") alleging that he had been discriminated against on the basis of sex and religion, and that he had been retaliated against for reporting the alleged discrimination, in violation of 42 U.S.C. § 2000e *et seq*. (Title VII) and 42 U.S.C. § 1981 (§ 1981) (Doc. 1). The Defendant answered the complaint on December 17, 2013. (Doc. 6).

On October 31, 2014, after the close of discovery, the Defendant moved for summary judgment as to all claims. (Doc. 23). Plaintiff's response and Defendant's reply were timely filed, and the motion is now ripe for consideration.

**II.    Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of

weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

### III.     Factual Background[1]

Allison is a Christian[2] male who was previously employed by the Defendant. In 2001, Allison was hired as a Department Manager. In 2003, he was promoted to Assistant Store Manager and transferred to the Defendant's Selma, Alabama (Store #700) location. Upon his arrival at Store #700, Allison claims that he began to be harassed about his religious beliefs via comments from his co-workers. These comments included the following: 1) Assistant Manager William Dancy's statement that Allison was "casket clean;" 2) co-worker Vivian Rogers' statement to Allison "if you call yourself a preacher" he "ought to be praying for them; " and 3) co-worker Angel's (last name unknown) statement "Who you had at the hotel? Preacherman don't go to hotels." after learning that Allison had gone to a hotel to watch a football game. (Doc. 31 at 5; Doc. 25-1 at 47, Dep. Allison at 178-81).

Allison was also required to perform more work than female employees. He felt he was responsible both for his duties, as well as those for which his female counterparts were solely responsible.  Specifically, he alleges that he was required to drive forklifts, scissor-lifts, and pallet stackers more than female Assistant Managers, was responsible for freight left overnight, and was not allotted as much staffing as female Assistant Managers with regard to stocking

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach,* 208 F.3d 919,

[2] Allison identifies himself as a "minister of the gospel of Jesus Christ." (Doc. 1 at 2).

shelves. (Doc. 25-1 at 34, 48; Dep. Allison at 178-28, 182-83).

Allison began reporting discrimination to the Defendant's management in February 2009. (Doc. 31 at 7). His last written report of discrimination occurred on or about August 26, 2012. (Id.).

On December 1, 2012, there was an in store accident involving a customer, referred to as a "Code White." (Doc. 25-1 at 43-45; Dep. Allison at 162-73). Allison was the member of management who responded to the Code White and policy required him to report the accident to the entity that manages the Defendant's accident claims within 24 hours of the accident. (Id.). Allison did not do so. (Id.).

On March 25, 2013, Allison was terminated by Store Manager Angelia (Angie) Wilson. (Doc. 31 at 8). The Defendant's stated reason for Allison's termination was his failure to report the customer accident within the 24 hour window. (Doc. 25-1 at 43-45; Dep. Allison at 162-73). Plaintiff claims he was terminated in retaliation due to his opposition to and reporting of employment discrimination.

On November 6, 2013 Allison filed this complaint against the Defendant, claiming sex discrimination, religious discrimination, and retaliation, in violation of Title VII and § 1981. Allison seeks "equitable, compensatory, punitive and/or nominal damages, and injunctive and declaratory relief" as well as costs, pre-judgment interest, and attorneys' fees and expenses. (Doc. 1 at 6-7).

**IV.   Analysis**

    **A.  Gender Discrimination**

Allison claims the Defendant discriminated against him on the basis of sex in violation of Title VII and 42 U.S.C. §1981. Title VII and Section 1981 have the same requirements of proof;

4

thus, Allison's claims are analyzed under the same framework. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Title VII provides "that it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Holifield v. Reno,* 115 F.3d 1555, 1561 (11th Cir. 1997) (quoting 42 U.S.C. § 2000e–2(a)(1)). A plaintiff may establish a discrimination claim through the introduction of direct or circumstantial evidence or statistical proof of discrimination. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir.2010). Here, Allison relies on circumstantial evidence of discrimination. A plaintiff may prove a claim of discrimination through circumstantial evidence under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), or alternatively, by presenting circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. *Smith v. Lockheed Martin Corp.*, 644 F.3d at 1321, 1325 (11th Cir. 2011) (stating that "the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case").

When relying on the *McDonnell Douglas* framework to support a claim of discrimination, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. A plaintiff establishes a *prima facie* case of discrimination under Title VII by showing: "(1) [he] is a member of the protected class; (2) [he] was subjected to adverse employment action; (3) [his] employer treated similarly situated [female] employees more favorably; and (4) [he] was qualified to do the job." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

With regard to establishing a *prima facie* case of gender discrimination under the *McDonnell Douglas* framework, Allison must identify similarly situated comparators who were treated differently from himself. "To make a comparison of the plaintiff's treatment to that of [an employee outside plaintiff's protected class], the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield,* 115 F.3d at 1562. Though Allison claims generally that females were treated more favorably than him and that he was mistreated because he was a male, he fails to identify any specific comparators or to point to any specifics indicating that comparators were similarly situated in all relevant respects. *Piquion v. Walgreen Co.,* 369 F.Supp.2d 1339, 1346 (S.D. Fla. 2005) (concluding that plaintiff could not establish a *prima facie* case where plaintiff "offers nothing more than conclusory statements that no other employee was treated the same way" and "fails to specifically identify an employee for the Court to consider when evaluating his claim"); *LeBlanc v. TJX Cos., Inc.,* 214 F.Supp.2d 1319, 1326 (S.D. Fla. 2002) (finding comparator argument conclusory where plaintiff "fails to indicate specific instances or individuals to support his assertions").

Moreover, Allison has also failed to establish a *prima facie* case of gender discrimination because he has failed to establish that he has suffered an adverse employment action based on gender. Though Allison was ultimately terminated and a termination is considered an adverse employment action, his complaint specifically notes, "[t]he real reason Plaintiff was terminated was because of his opposition to and reporting of discrimination in employment in violation of Title VII of the Civil Rights Act of 1964." (Doc. 1 at 3). Because he alleges his termination was done in retaliation, rather than as a result of sex or religious discrimination, he must identify the adverse employment action or actions on which he bases his *prima facie* case of sex.

Here, the Court assumes that Allison's position is that his perceived outperformance of

females, double workload, lack of stock help, and additional machinery operation[3] constitute adverse employment actions for the purposes of his sex discrimination claim.  In the Eleventh Circuit, "[t]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)(emphasis in original).

Other than his opinion of unfairly being required to operate machinery more frequently than female co-workers, Allison has not alleged that he suffered any harm by being assigned tasks different from female Assistant Managers. Even if a lack of help stocking on specific occasions was detrimental to Allison's perceived productivity, this is insufficient to establish a "serious and material change in the terms, conditions, or privileges of employment." In sum there is not sufficient evidence from which a reasonable person in Allison's circumstances would view these actions as materially adverse, especially considering that each task was admitted by Allison to be duties of his position. The Eleventh Circuit has also explained, "[i]n the vast majority of instances, however, we think an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause—especially where, as here, the work assignment at issue is only by definition temporary and does not affect the employee's permanent job title or classification." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1245 (11th Cir. 2001).  In this case, Allison does not even allege a loss of prestige.  Rather, Allison bases his claim of discrimination on the fact that Wal-Mart did not require female Assistant Managers to

---

3 The evidence presented of these claims is Allison's deposition testimony.

perform all of their required duties, while requiring him to do so.   However, Allison has failed to show any tangible harm as a result.

In sum, Allison has not established a *prima facie* case of gender discrimination. Moreover, he has not presented "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination…." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)(footnote and citation omitted).   Accordingly, the Defendant's motion for summary judgment as to the gender discrimination claim (Count 1) is **GRANTED**.[4]

## B. Hostile work environment based on religion[5]

With regard to Allison's religious discrimination claim, he indicates that he was "harassed" because of his religion.   Allison's proffered evidence of religious discrimination is limited to three comments made by co-workers. These comments include the following: 1) Assistant Manager William Dancy's statement that Allison was "casket clean;" 2) co-worker Vivian Rogers' statement to Allison "if you call yourself a preacher" he "ought to be praying for them; " and 3) co-worker Angel's (last name unknown) statement "Who you had at the hotel? Preacherman don't go to hotels." after learning that Allison had gone to a hotel to watch a football game. (Doc. 31 at 5; Doc. 25-1 at 47, Dep. Allison at 178-81).   In his deposition, Allison stated that he heard no other comments about religion while employed by the Defendant. (Doc. 25-1 at 48; Dep. Allison at 182).

To establish a claim for a hostile work environment Allison must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee [ ]; (4) that the harassment was

---

4 Allison also asserts that "Defendant has not advanced a bona fide occupational reason for Allison receiving extra assignments…." However, there is no claim that gender was used as a qualification for employment or advancement.  Accordingly, the BFOQ defense is not relevant.
5 Although the complaint does not specifically refer to the religious discrimination as a hostile work environment claim, both parties have treated this claim as such in their current pleadings.

> sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  As evidence of a hostile work environment, Allison relies exclusively on the three previously discussed comments from non-supervisory co-workers.[6]  This evidence is wholly insufficient to establish a hostile work environment because the alleged harassment was neither severe nor pervasive.  *See Id.* at 1275 (stating a plaintiff may establish a hostile work environment claim under Title VII by showing "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (internal quotations and citation omitted)).  "Even considering these incidents cumulatively, a jury could not reasonably find that this conduct was sufficiently severe and pervasive to be objectively hostile and abusive, and thus, this conduct does not satisfy the fourth element of a hostile work environment claim." *Byrd v. Postmaster General*, 582 Fed.Appx. 787, 791 (11th Cir. 2014)(affirming the district court's grant of summary judgment on a religiously-based hostile work environment claim when the only evidence presented was "(1) singing of religious songs, quoting religious scripture, preaching, and speaking about Church and the Bible; (2) referring to Byrd as the devil and Satan an unspecified number of times over a six-month period; and (3) informing Byrd that she would go to Hell for not believing in Jesus on one occasion.").  Accordingly, the Defendant's motion for summary judgment as to the religious discrimination claim (Count 2) is **GRANTED**

### C. Retaliation

---

[6] The Court does not consider the "casket clean" statement evidence of a religion-based hostile work environment. "[F]acially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).[6]

Allison alleges that the Defendant retaliated against him by terminating his employment as a result of his "opposition to and reporting of discrimination" in violation of Title VII and §1981a. (Doc. 1 at 5).

> To make out a prima facie case of retaliation, [Allison] must establish that (1) [he] engaged in statutorily protected activity, (2) [he] suffered a materially adverse action, and (3) there exists a causal link between the two. If a plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse employment action. If an employer provides a legitimate non-discriminatory reason, the burden shifts to the plaintiff to show that the employer's given reason is a pretext designed to mask retaliation.

*Smith v. City of Fort Pierce, Fla.*, 565 F. App'x 774, 776-77 (11th Cir. 2014) (internal citations omitted).

Allison claims that he had been reporting discrimination since February 2009 and that August 26, 2012 was the date of his last written report of discrimination to management. (Doc. 31 at 7). No evidence of additional reports made later than August 26, 2012 has been presented. On March 25, 2013, nearly seven months later, Allison was terminated. (Doc. 31 at 5). Seven months is too lengthy of a time period between the protected activity and the adverse action to establish a causal link. *See Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough [to establish temporal proximity, without more]."); *See also Wascura v. City of South Miami,* 257 F.3d 1238, 1248 (11th Cir.2001) ("[I]n the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation."). Allison has not presented evidence of causation other than the temporal proximity between the protected activity and the termination and therefore fails to make a *prima facie* case of

retaliation.[7]

Even if Allison had established a *prima facie* case of retaliation, the Defendant has put forth a legitimate non-discriminatory reason for the termination: that Allison failed to report a customer incident within a 24 hour window as required by company policy. Allison does not dispute that there was a customer incident, that he failed to report the incident within 24 hours, or that he failed to follow the company's procedures when he did not report incident within the 24 hour window. (Doc. 25-1 at 44-45; Dep. Allison 166-70). Instead, Allison argues that the Defendant failed to adhere to its own progressive discipline policy when it terminated Allison, and that its deviation is evidence of pretext. Even assuming, without finding, that the Defendant failed to follow its progressive discipline policy when it terminated Allison, "standing alone, deviation from a company policy does not demonstrate discriminatory animus." *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355-56 (11th Cir. 1999)(citing *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir.1996) (Deviation from company policy is not evidence of discrimination, absent a nexus between deviation and employee's protected status.). Allison has not identified any employee who engaged in the same misconduct and was treated differently, or any evidence that the deviation from policy was due to Allison's participation in protected activity. "To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner." *Rojas v. Florida*, 285 F.3d 1339, 1344 n. 4 (11th Cir. 2002).

In sum, Allison has not established a *prima facie* case, nor has he presented evidence that the Defendant's proffered reason for his termination was a pretext designed to mask retaliation. As a result, the Defendant's motion for summary judgment as to Allison's retaliation claim

---

7 The Court notes that Allison has put forward evidence that the Defendant deviated from its policies when it terminated him. The cases cited by Allison pertaining to deviation from policy all pertain to evaluation of this fact as it relates to pretext, not causation. Even considering the deviation as causation evidence, the Court finds that it is insufficient to show that the decision to terminate Allison for an admitted policy violation was related to his previous complaints of discrimination.

11

(Count 3) is **GRANTED**.

## V.	Conclusion

Accordingly, it is **ORDERED** that the Defendant's Motion for Summary Judgment on all claims (Docs. 23) is **GRANTED**.

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **12th** day of **January 2015.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT**